UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TANYA GAMBLE,

              Plaintiff,

 -v-                                                      No.  20-CV-10388-LTS

FIELDSTON LODGE NURSING AND
REHABILITATION CENTER and XYZ
CORP. 1-10,

              Defendants.

--------------------------------------------------------x

### MEMORANDUM ORDER

Plaintiff Tanya Gamble ("Plaintiff") asserts claims of sexual orientation discrimination, retaliation, and promotion of a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq. ("Title VII"), against defendants Fieldston Lodge Nursing and Rehabilitation Center ("Fieldston") and XYZ Corp. 1-10, all arising out of Plaintiff's employment with Fieldston between 2013 and August 13, 2019.

Fieldston moves for judgment on the pleadings as to Plaintiff's third cause of action—alleging a hostile work environment in violation of Title VII—pursuant to Federal Rule of Civil Procedure 12(c).  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Fieldston's motion is granted.

### BACKGROUND

The following allegations are taken from the Complaint and are presumed true for the purposes of this motion.

Plaintiff is a lesbian woman who was employed at Fieldston in various capacities beginning in early 2013. (Docket entry no. 1 ("Compl.") ¶¶ 16-32.)[1] For several years, Plaintiff's sexual orientation was not known by her colleagues at Fieldston. (Id. ¶ 31.) On May 21, 2019, however, a video of Plaintiff's May 18, 2019, engagement to her same sex partner was posted on Facebook, and "[i]mmediately . . . went viral at Plaintiff's workplace and [ ] attracted adverse and negative attention." (Id. ¶¶ 29-33.) Certain of Plaintiff's co-workers made comments to Plaintiff about her sexual orientation; for example, one co-worker "stated to Plaintiff, 'I didn't know you were like that,' and snapped his fingers." (Id. ¶ 36.) In response, on May 22, 2019, Plaintiff complained about the "unwelcomed and negative attention" (id. ¶ 37) to three persons at Fieldston. A representative from Human Resources responded, "Bitch don't worry about these people talking about you," an Assistant Director of Nursing replied "Don't worry about it," and an "MDS Coordinator" responded "Don't worry about it. You'll get through it." (Id. ¶¶ 37-40.) None of these persons took remedial action to address Plaintiff's concerns. (Id. ¶ 41.)

After her engagement video went viral, Plaintiff became "exposed to discriminatory comments and jokes, and awkward silence and looks," from certain Fieldston employees. (Id. ¶ 42.) For instance, she was "approached by Fieldston employees and uncomfortably asked, with the usual smirk on their faces, whether she is attending the New York City LGTBQ [sic] Pride Parade." (Id. ¶ 47.) On another occasion, an employee commented to Plaintiff "You don't look gay." (Id. ¶ 49.) Plaintiff's co-workers also made comments about other Fieldston employees believed to be homosexuals: when speaking about a male employee,

---

[1] While Plaintiff's Complaint details her experience at Fieldston at some length, this Background section focuses on those allegations most relevant to Plaintiff's hostile work environment claim.

staff members would state that he is "'one of those people' and would make a feminine gesture with their hand so as to imply that he is gay," or would "imitate [his] gesture and the way he walks in a mocking manner." (Id. ¶¶ 43-45.) A Fieldston administrator named Knolls, Plaintiff alleges, "was heard numerous times using the word 'faggot' in a derogatory manner when referring to gay men." (Id. ¶ 46.)

Plaintiff also alleges that, after she made her complaints on May 22, 2019, she became the target of discrimination and retaliatory actions by Fieldston. For instance, she alleges that administrator Knolls "stopped talking to Plaintiff almost completely" (Compl. ¶ 51), and that Fieldston retracted an offer to Plaintiff to assume the position of Staffing Coordinator, without explanation, and ultimately terminated her employment on August 13, 2019. (Id. ¶¶ 52-53, 55.) Plaintiff reports that "[d]ue to the stress and anxiety caused by Defendants' discriminatory, harassing and retaliatory actions, Plaintiff suffered and continues to suffer from severe emotional distress." (Id. ¶ 57.)

## DISCUSSION

Fieldston moves for judgment on the pleadings as to Count III of Plaintiff's Complaint, which alleges that she suffered a hostile work environment violative of Title VII.[2] "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal

---

[2] Fieldston does not seek judgment on the pleadings as to Count I (Title VII discrimination) or Count II (Title VII retaliation) of Plaintiff's Complaint.

conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).[3]

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex[ual orientation]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).  "In determining whether a work environment is hostile," this Court must consider "the totality of the circumstances, which includes: '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.'" Reyes v. Westchester Cty. Health Care Corp., No. 21-0410, 2021 WL 4944285, at *3 (2d Cir. Oct. 25, 2021) (quoting Patane, 508 F.3d at 113); see also Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 390 (2d Cir. 2020) (explaining that the absence of "physical threats or impact on job performance" is not dispositive, and that "the overall severity and pervasiveness of discriminatory conduct must be considered").  "Title VII does not set forth a general civility code for the American workplace," however, and "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable

---

[3]   In resolving Fieldston's motion, the Court does not consider the affidavits submitted by the parties (docket entry nos. 19-3 & 29) which are matters outside the pleadings.

person would find hostile or abusive—is beyond Title VII's purview." Redd v. New York Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotation marks and citations omitted).

Plaintiff's Complaint does not plausibly allege the existence of an environment that was so "objectively severe or pervasive" as to rise to the level of a hostile work environment under Title VII and the case law interpreting it, or facts indicating that Plaintiff subjectively perceived that environment as such.  Rather than alleging specific severe or pervasive conduct based on her protected characteristics that changed her conditions of employment, Plaintiff cites the incidents that undergird her discrimination and retaliatory behavior claims, and asserts generally that "Defendants promoted, allowed, encouraged and maintained a hostile work environment for Plaintiff by Defendants' failure and/or refusal to prevent, cure or eliminate the discrimination and the abusive work conditions Plaintiff endured."  (Compl. ¶ 67.)

The few examples proffered in the Complaint of comments made to Plaintiff by her co-workers after learning of her sexual orientation over a period of four months (Compl. ¶¶ 36, 47, 49), while insensitive and offensive, are not "so severe or pervasive as to have altered the conditions of [Plaintiff's] employment." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015).  The same is true as to those comments alleged to have been made by Plaintiff's co-workers about Plaintiff's male co-worker who was believed to be a homosexual (Compl. ¶¶ 43, 45) which, though also offensive, were few in number and neither directed at Plaintiff nor especially severe in nature.  See Lane v. Collins & Ailman Floorcoverings, Inc., No. 00-CV-3241-RMB, 2001 WL 1338918, at *5 (S.D.N.Y. Oct. 31, 2001) (granting summary judgment in favor of defendants on a plaintiff's hostile work environment claim premised in part on his co-workers' "infrequent, isolated" "wrist dropping" and "lisping").[4]  Similarly, the three alleged

---

[4] Plaintiff's general allegation that "[t]he daily comments, awkward silence and looks, as well as jokes continued until Plaintiff's termination" (Compl. ¶ 54) does not support

responses from the persons to whom Plaintiff complained on May 22, 2019 (Compl. ¶¶ 37-40), are insufficient, alone or in combination with the other alleged comments, to support plausibly a hostile work environment violative of Title VII.

The Complaint's two allegations about administrator Knolls—that he "stopped talking to Plaintiff almost completely" after she made her complaints on May 22, 2019, and that he "was heard numerous times using the word 'faggot' in a derogatory manner when referring to gay men" (Compl. ¶¶ 46, 51)—are disturbing, but without more and even considered in their totality among the Complaint's other allegations do not suffice to indicate the existence of a severe or persistent hostile work environment. The allegation that Mr. Knolls stopped talking to Plaintiff "almost" completely (conduct that the Complaint alleges was retaliatory (see id. ¶¶ 50, 51)), at least absent any more specific allegations about the regularity and volume of contact between Plaintiff and Mr. Knolls before Plaintiff's complaints, does not support an inference that there was a workplace in which hostility based on a protected characteristic was objectively severe or pervasive. See Orsaio v. New York State Dep't of Corr. & Cmty. Supervision, No. 6:17-CV-685-BKS-TWD, 2019 WL 3891085, at *24 (N.D.N.Y. Aug. 19, 2019) ("As for the allegation that Hess ignored Plaintiff, that behavior is not sufficient severe or pervasive to be actionable."); Dechberry v. New York City Fire Dep't, 124 F. Supp. 3d 131, 157 (E.D.N.Y. 2015) ("Such instances of coworker discord do not rise to the level of a hostile work environment."); Corso v. New York State Dep't of Corr. & Cmty. Supervision, No. 1:16-CV-

---

plausibly an inference that the discrete exemplary comments identified in the Complaint were part of a pervasive hostile work environment, see Argeropoulos v. Exide Techs., No. 08-CV-3760-JS, 2009 WL 2132443, at *6 (E.D.N.Y. July 8, 2009) ("[T]he Court need not accept as true Plaintiff's conclusory and entirely non-specific allegation that similar conduct occurred on a 'daily and continuous basis because he is Greek.'"), at least absent more specific and non-conclusory allegations describing the purported pervasiveness of the alleged conduct.

01488-BKS-ML, 2019 WL 2869573, at *10 (N.D.N.Y. July 3, 2019) (granting summary judgment in favor of defendant on a plaintiff's hostile work environment claim premised in part on claims of being ignored by colleagues); Costello v. New York State Nurses Ass'n, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011) (same).  As to Administrator Knolls' alleged use of the term "faggot" to refer to gay men, the Complaint does not allege that Plaintiff was present when that term was used, or proffer any details as to who heard Mr. Knolls use that term or when and how Plaintiff learned of its use.  While abhorrent, Mr. Knolls' alleged use of that epithet outside Plaintiff's presence, at least without such supporting allegations, does not support plausibly a hostile work environment claim.  See Garcia v. NYC Health & Hosps. Corp., No. 19-CV-997-PAE, 2019 WL 6878729, at *7 & at *7 n.9 (S.D.N.Y. Dec. 17, 2019) (dismissing hostile work environment claim notwithstanding a plaintiff's allegation that his supervisor referred to him as a "faggot" in another language, explaining that the plaintiff's allegations fell short of the standards to plead such a claim, and collecting cases); DeLuca v. Sirius XM Radio, Inc., No. 12-CV-8239-CM, 2017 WL 3671038, at *20 (S.D.N.Y. Aug. 7, 2017) (acknowledging that offensive comments heard second-hand, while "less persuasive," can also impact the work environment, but granting summary judgment in favor of defendants on a plaintiff's state law hostile work environment claims despite that plaintiff's evidence that her supervisor used the terms "dyke" and "faggot" to describe Plaintiff and her gay coworkers).  See also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment to implicate Title VII.") (internal quotation marks and citation omitted).

       Further, while the alleged comments her co-workers at Fieldston directed at Plaintiff (or made in her presence) were inappropriate, the Complaint does not allege that those comments were threatening or humiliating, rather than merely offensive, or that they interfered

with Plaintiff's work performance in the few months before Fieldston terminated her employment. While not dispositive, the absence of such allegations in the context of the totality of the circumstances alleged in the Complaint is still relevant, Rasmy, 952 F.3d at 390, and weighs in this case against a conclusion that the environment alleged in the Complaint was objectively severe or pervasive.

Finally, and for similar reasons, the Complaint does not plausibly allege that Plaintiff subjectively perceived her work environment as hostile or abusive under the relevant hostile work environment standards. The Complaint alleges that Plaintiff made three complaints arising from the circulation of her engagement video in May 2019, but those three complaints occurred on a single day (see Compl. ¶¶ 37-40) at the very beginning of the relevant period; the Complaint does not allege how Plaintiff reacted (either internally or externally) to the charged conduct during the following four months. The Complaint's conclusory allegation that "[d]ue to the stress and anxiety caused by" the sum of Fieldston's actions (which included Plaintiff's termination), Plaintiff (at unspecified times) "suffered and continues to suffer from severe emotional distress" (id. ¶ 57), likewise does not plausibly frame a claim that Plaintiff subjectively perceived her environment as hostile or abusive during the relevant time period.

As pled, Plaintiff's Complaint, construed in the light most favorable to her, does not plausibly allege that she experienced an "objectively severe or pervasive" work environment as that term has been construed in this Circuit—or that she subjectively perceived that environment as such—while employed at Fieldston. Her hostile work environment claim under Title VII must therefore be dismissed.

<u>CONCLUSION</u>

For the reasons discussed above, Fieldston's motion for judgment on the pleadings as to Count III of Plaintiff's Complaint (docket entry no. 19) is granted.

The parties are directed to file a joint letter by **June 15, 2022**, regarding the completion of discovery (<u>see</u> docket entry no. 26) and informing the Court as to whether either party intends to file a motion for summary judgment. If either side intends to file a motion for summary judgment, the parties shall include in their joint letter a proposed briefing schedule for the Court's consideration.

This Memorandum Order resolves docket entry no. 19.

SO ORDERED.

Dated: June 1, 2022                     /s/ Laura Taylor Swain
      New York, New York           LAURA TAYLOR SWAIN
                                     Chief United States District Judge